UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
NORMAN MERO,                                )
                                            )
                Plaintiff,                  )
                                            )
        v.                                  )   Civil Action No. 11-0817 (ABJ)
                                            )
CITY SEGWAY TOURS OF                        )
WASHINGTON DC, LLC, *et al*.,               )
                                            )
                Defendants.                 )
                                            )

# MEMORANDUM OPINION

Plaintiff Norman Mero brings this action against defendants City Segway Tours of Washington D.C., LLC ("CST DC"), and City Segway Tours ("CST") alleging that their negligence, breach of contract, and unfair trade practices culminated in a collision in which he was injured. Defendants have moved to dismiss Counts II (breach of contract) and III (unfair trade practices) for failure to state a claim, or in the alternative, for summary judgment on those claims. Defendants have also moved to dismiss all claims against defendant CST under the theory that CST is not a proper legal entity that can be sued.

Since plaintiff has not alleged the existence of an enforceable contract, the Court will grant defendants' motion as to Count II, but it will deny it as to Count III. The Court will also deny defendants' motion to dismiss defendant CST from the remaining counts at this time.

## FACTUAL BACKGROUND

On May 21, 2010, plaintiff participated in one of the defendants' guided tours of Washington, D.C., in which visitors traverse the city while riding on Segway personal

transportation vehicles. This action arises out of a collision between plaintiff and another tour participant that left plaintiff with a fractured right arm.

Plaintiff, a resident of Ontario, Canada, signed up to take a tour with CST DC during a visit to Washington. Am. Compl. ¶ 1. He received an email that confirmed his tour reservation, which included the meeting point for the tour, directions, tips, the cancellation policy, and a section titled "Important Information." *Id*. ¶ 2. The "Important Information" section contained the following statement: "Your safety is always our highest priority; therefore, we begin each tour with a very thorough orientation of the Segway and its use before going out to enjoy Washington DC!" *Id.*

Plaintiff alleges that he appeared for the scheduled tour, signed a liability waiver form, and received instructions about how to use the Segway from a CST DC tour guide. *Id.* ¶¶ 1, 2, 5, 10. He states that the instructions lasted approximately 10 to 15 minutes. *Id*. ¶ 6. He also alleges that at some point, he noticed that a control key was missing from his Segway. According to plaintiff, when he brought that circumstance to his tour guide's attention, the guide assured him that it was "not important." *Id.* ¶¶ 44–47. Plaintiff also alleges that defendants "knew or should have known about some of the not so obvious characteristics of Segways and how they operate." *Id.* ¶ 42.

The amended complaint claims that after the tour was underway, the guide directed the group to pair up in a "buddy buddy" arrangement, which had not previously been demonstrated to the group. *Id*. ¶¶ 9–11. While plaintiff was attempting to maneuver in this fashion, his Segway collided with another, and he was "thrown violently to the hot asphalt pavement." *Id.* ¶ 14. He sustained compound fractures to his arm and endured a number of complications due to

follow-up treatments. *Id*. ¶¶ 18–20. Plaintiff attributes the accident to a "violent and unexpected machine reaction." *Id*. ¶ 15.

Plaintiff instituted this lawsuit in the Superior Court for the District of Columbia on April 11, 2011. Defendants subsequently removed the case to this Court on grounds of diversity jurisdiction [Dkt. # 1], and on June 24, 2011 plaintiff filed his amended complaint in this Court [Dkt. # 17]. Count I alleges negligence, Count II alleges breach of contract, and Count III alleges unfair trade practices under the DC Consumer Protection Procedures Act, D.C. Code § 28-3904, *et. seq*. (2006) ("CPPA"). Since defendants have not moved to dismiss Count I, discovery is underway.

## STANDARD OF REVIEW

### I. Motion to Dismiss

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 129 S. Ct. at 1949. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than

"labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

**II.    Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). Merely identifying a fact

in dispute is not enough to preclude summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); a dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party, and a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

### I. Plaintiff fails to state a claim for breach of contract.

#### a. Plaintiff fails to allege sufficient facts to show that the email confirmation is an enforceable contract.

Under District of Columbia law, "[t]he party asserting the existence of an enforceable contract . . . bears the burden of proving that the parties entered into an enforceable contract." *Ponder v. Chase Home Fin., LLC*, 666 F. Supp. 2d 45, 48 (D.D.C. 2009) (citations omitted).[1] The essential elements of a contract are "competent parties, lawful subject matter, legal consideration, mutuality of assent and mutuality of obligation." *Id.* at 48 (citations omitted); *see also Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995) (citations

---

1     The District of Columbia's choice-of-law rules, which this Court must follow when exercising diversity jurisdiction, require the Court to consider "the governmental policies underlying the applicable law and determine[] which jurisdiction's policy would be the most advanced by the application of its law to the facts of the case, taking into consideration (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship is centered." *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 59 (D.D.C. 2010). The parties agree that District of Columbia law applies in this case. *See* Am. Compl. ¶ 22; Def.'s Mem. at 4. The Court also agrees that application of these factors directs that outcome.

omitted) ("[F]or an enforceable contract to exist, there must be both (1) agreement as to all material terms; and (2) intention of the parties to be bound.").

In this case, plaintiff has difficulty putting his finger on the precise contract involved, and the complaint fails to specify any of the material terms of the alleged contract. While it is true that "[a]ll agreements have some degree of indefiniteness and some degree of uncertainty," *EastBanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1002 (D.C. 2008), the contract must "be sufficiently definite as to its material terms (which include, for example, subject matter, price, payment terms, quantity, quality, and duration) that the promises and performances to be rendered by each party are reasonably certain." *Virtual Def. & Dev. Int'l, Inc. v. Republic of Mold.*, 133 F. Supp. 2d 9, 17 (D.D.C. 2001) (internal citations omitted); *see also EastBanc*, 940 A.2d at 1002 ("[T]he terms of the contract must be clear enough for the court to determine whether a breach has occurred and to identify an appropriate remedy.").

Here, while plaintiff begins Count II with an assertion that he "was owed a number of contractual based duties which were created expressly and by implication," Am. Compl. ¶ 30, that paragraph of the amended complaint goes on to substitute a string of legal citations for factual allegations setting forth the nature of any promises made or the acts to be performed. *Id.* In the next paragraph, plaintiff seems to allege that it was the email confirmation he received that constitutes the actionable contract, but even that assertion is quite vague: "[p]laintiff was promised contractually adequate and appropriate training by the Defendants. See for example the text of the confirming email." Am. Compl. ¶ 31.

Plaintiff points to the sentence in the "Important Information" section of the email: "Your safety is always our highest priority; therefore, we begin each tour with a very thorough orientation of the Segway and its use before going out to enjoy Washington DC!" Am. Compl. ¶

2. Notwithstanding the unspecific nature of this promotional statement, plaintiff contends that defendants entered into a contract to provide adequate and appropriate Segway training and to properly disclose known risks. *Id*. ¶¶ 33–41. He alleges that defendants breached their contractual obligation by failing to provide proper training and adequate staffing. *Id*. ¶¶ 8, 31–41. He further maintains that defendants violated the contractual promise because the Segway instructions lasted only 10–15 minutes "and were not the 30 minutes as represented."[2] *Id*. ¶ 6. Finally he asserts that defendants failed to provide a properly functioning Segway in breach of this contract. *Id*. ¶¶ 38, 40.

But plaintiff's amended complaint fails to allege the facts necessary to show that the email is an enforceable contract. The amended complaint does not allege mutuality of assent to specific terms, mutuality of obligation, or legal consideration. *See Ponder*, 666 F. Supp. 2d at 48. Terms such as "very thorough" are not sufficiently clear or definite to create an enforceable contractual duty. *Virtual Def. & Dev. Int'l, Inc.*, 133 F. Supp. 2d at 17; *EastBanc, Inc.*, 940 A.2d at 1002. Plaintiff does not identify any facts that demonstrate a promise made by defendants to provide any particular training regimen for any particular duration. *Jack Baker, Inc.*, 664 A.2d at 1238. Plaintiff was provided with an opportunity to amend his complaint after the defendants filed their initial motion to dismiss, *see* Minute Entry for proceedings on June 16, 2011, but he has yet to identify any reasonably certain terms that could constitute an enforceable contract between the parties. Therefore, Count II will be dismissed with prejudice for failure to state a claim for breach of contract.

---

2       Although plaintiff asserts that the Segway instructions "were not the 30 minutes as represented," the Court finds nothing in the amended complaint alleging that defendants promised plaintiff a 30-minute orientation. The amended complaint simply alleges that the confirmation email promise "a *very thorough* orientation." Am. Compl. ¶ 2 (emphasis added).

7

### b. Plaintiff fails to allege facts sufficient for a breach of the implied covenant of good faith and fair dealing

Count II further alleges that defendants violated the implied covenant of good faith and fair dealing. Am. Compl. ¶ 30. All contracts contain an implied covenant of good faith and fair dealing, which prevents either party from "do[ing] anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Nugent v. Unum Life Ins. Co. of Am.*, 752 F. Supp. 2d 46, 56 (D.D.C. 2010), citing *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006). "If the party to a contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing." *Nugent*, 752 F. Supp. 2d at 56, quoting *Hais v. Smith*, 547 A.2d 986, 987–88 (D.C. 1988). In order to survive a motion to dismiss for breach of the implied covenant of good faith and fair dealing, plaintiff must allege facts to show that defendant "has taken steps, or refused to take steps, which ultimately had the effect of destroying or injuring the right to receive the fruits of the contract." *Nugent*, 752 F. Supp. 2d at 56, quoting *Hais*, 547 A.2d at 987 (internal quotation marks omitted).

The Court has already determined that plaintiff fails to allege the existence of an enforceable contract at all, and the absence of a contract alone is sufficient to defeat the implied covenant claim. *See, e.g.*, *Steele v. Isikoff*, 130 F. Supp. 2d 23, 33 (D.D.C. 2000) (refusing to recognize the covenant of good faith and fair dealing where no valid contract existed between the parties). But, even if the amended complaint could be read to allege that the parties entered into some reasonably definite, enforceable contract, plaintiff still fails to allege sufficient facts to support a claim that defendants breached the implied covenant of good faith and fair dealing. *See Nugent*, 752 F. Supp. 2d at 56. The amended complaint merely states that the implied

8

covenant of good faith is inherent in every contract and that defendants breached it. Am. Compl. ¶¶ 30, 33, 41. This conclusory allegation, which does not specify how defendants evaded the spirit of the contract, willfully rendered imperfect performance, or interfered with performance by plaintiff, does not suffice to state a claim under the standard set forth in *Twombly* and *Iqbal*. Accordingly, and because Plaintiff was provided with an opportunity to amend his complaint after the defendants filed their initial motion to dismiss, *see* Minute Entry for proceedings on June 16, 2011, but he has yet to identify how defendants breached the covenant of good faith, the Court will dismiss Count II with prejudice for failure to state a claim.

## II. Plaintiff alleges facts sufficient for a claim based on unfair trade practices.

Under the CPPA, a corporation may not "misrepresent as to a material fact which has a tendency to mislead," "whether or not any consumer is in fact misled, deceived or damaged thereby[.]" D.C. Code § 28-3904(e). A consumer bringing a claim under section 28-3904(e) "need not allege or prove intentional misrepresentation to prevail on a claimed violation [but] must allege a material fact which has a tendency to mislead." *Grayson v. AT&T Corp.*, 15 A.3d 219, 251 (D.C. 2011) (citations omitted). "A claim … under the CPPA is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer." *Whiting v. AARP*, 701 F. Supp. 2d 21, 29 (D.D.C. 2010), citing *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008). However, if "[a]ll statements that [plaintiff] points to as misleading are in fact either accurate, not misleading to a reasonable consumer, or mere puffery," there is no actionable conduct under the CPPA. *Id.* at 29.

Plaintiff's complaint quotes liberally from the CPPA, Am. Compl. ¶ 42, and the mere repetition of those legal provisions does nothing to state a claim. *Iqbal*, 129 S. Ct. at 1950. But in the midst of his two page recitation of the terms of the statute, plaintiff does allege one

9

misrepresentation.  He claims that:  he asked his tour guide about a missing key device on his Segway, the guide told him that "it was not important," this representation was misleading, and it was the lack of a key device that caused his injury.  *Id.* ¶¶ 45, 47.  Accepting plaintiff's factual assertions as true for purposes of this motion, these allegations are sufficient to state a claim under section 28-3904(e).  *See Grayson*, 15 A.3d at 251; *Hughes v. Abell*, 2010 U.S. Dist. LEXIS 121622, at 17–18 (D.D.C. Nov. 16, 2010) (refusing to dismiss a claim under Section 28-3904(e) where a bank representative told a customer that "he did not need to worry about a loan being an adjustable-rate mortgage" because the statement could have reasonably misled the consumer about the potential risks associated with the loan).

Defendants characterize plaintiff's unfair trade practice claims as conclusory, vague, and lacking factual support.  Def.'s Mem. at 9–11.  But the Court is required to resolve any factual inferences in plaintiff's favor at this stage of the proceedings, and defendants' blanket statements belittling the complaint are not enough to meet their burden to establish that they are entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) ("The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.").  So the Court will deny the motion to dismiss and the motion for summary judgment on Count III at this time without prejudice to the submission of a properly supported dispositive motion at the close of discovery.

## III. Defendants have failed to meet their burden of proving that City Segway Tours is not a proper party

In his amended complaint, plaintiff alleges that defendant CST licenses its franchise to defendant CST DC and oversees its management and promotional activities.  Am. Compl. ¶ 4.  But in their motion to dismiss, defendants assert that "City Segway Tours is not a viable legal entity," Def's. Mem. at 10, and therefore it is not a proper defendant in this lawsuit.  Defendants

10

proffer an affidavit of the President of CST DC, in which he avers: "City Segway Tours is not a business entity. It is a general term that encompasses City Segway Tours of Washington, DC LLC" and several other LLCs in other cities, which are all "organized under the laws of Delaware and have their headquarters in Austin, Texas." Mebane Aff. ¶ 4. Defendants assert that the CST office in Texas is simply where all of the high level officers of the individual City Segway Tours LLCs, including CST DC, sit. Mebane Aff. ¶ 6. The President of the DC LLC states that he and other officers of CST DC and the other LLC's "direct, control and coordinate the companies' activities from the headquarters, in Texas." *Id.*

In response, plaintiff contends that representations on the CST website and the fact that a "core management group oversees the operations of each of the limited liability corporations" supply the necessary proof of CST's existence as a separate legal entity.[3] Pl.'s Opp. at 13. He points out that defendants have not disclosed any financial statement showing the ownership of CST DC and, therefore, have not shown that CST is unrelated to CST DC.[4] Pl.'s Opp. at 2–3. Neither party has provided the Court with any corporate formation documents or state registration records that would clarify the issue.

A corporation's capacity to sue or be sued is determined by the law under which it was organized. Fed. R. Civ. P. 17. This Court "recognizes foreign LLCs and applies the foreign jurisdiction's law to their formation, internal affairs, and the liability of their members and managers." *Ass'n of Merger Dealers, LLC v. Tosco Corp.*, 167 F. Supp. 2d 65, 72 (D.D.C.

---

3   Plaintiff also cites a "letter of July 9, 2010 prepared by the supposed non-entity," but that letter is not a part of the Court's record.

4   City Segway Tours of D.C., LLC did file a Certificate of Disclosure pursuant to LCvR 7.1 on May 2, 2011, which states that there are no parent companies, subsidiaries, or affiliates associated.

2001), citing D.C. Code § 29-1052. Under Delaware law, a franchisor may be vicariously liable for the acts of its franchisee. *Billops v. Magness Const. Co.*, 391 A.2d 196, 197 (Del. 1978) (holding that a franchisor may be vicariously liable for the acts of a franchisee if they have an agency relationship); *see also Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 169 (Del. Ch. 2003) (explaining that under agency liability, the agent must have "the power to act on behalf of the principal with third persons," internal quotation marks omitted). Therefore, because the Court must construe the amended complaint liberally in plaintiff's favor, the Court finds that the amended complaint sufficiently alleges that defendant CST is an independent entity that can be sued and will not dismiss CST from the case under Rule 12(b)(6).

It is possible that this is a matter that is amenable to summary judgment, but to date, defendants have failed to meet their burden to demonstrate that the issue can be resolved as a matter of law. At this point, there is a genuine factual dispute over CST's legal status and its relationship to CST DC, and neither party has provided the Court with the kind of documentation that would allow resolution as a matter of law.[5]

Therefore, the Court will deny the motion to dismiss or in the alternative for summary judgment as to CST without prejudice to any future dispositive motions.

---

5    Examples of documentation that parties might produce in discovery include a certificate of registration for CST DC or a franchise agreement. *See Billops*, 391 A.2d at 197–98.

## CONCLUSION

For the foregoing reasons, the Court will grant with prejudice defendants' partial motion to dismiss or in the alternative for summary judgment with respect to Count II, and deny it with respect to Count III; and will deny defendants' motion to dismiss defendant City Segway Tours from the remaining counts. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: November 28, 2011