UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| NORMAN MERO, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 11-0817 (ABJ) |
| CITY SEGWAY TOURS OF WASHINGTON DC, LLC, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Norman Mero brings this action against defendant City Segway Tours of Washington, D.C., LLC ("CST"), arising from injuries that plaintiff allegedly incurred while participating in CST's guided tour of Washington, D.C., using Segway personal transportation vehicles. After previous rounds of dispositive motions, the only count remaining in this action asserts a common law negligence claim. Defendant has moved for summary judgment on the grounds that: (1) the claim is barred by the liability waiver plaintiff signed; (2) defendant did not breach a duty of care owed to plaintiff; (3) plaintiff was contributorily negligent; and (4) plaintiff assumed the risk. Def.'s Mem. in Support of its Mot. for Summ. J. [Dkt. # 49-2] ("Def.'s Mot. for Summ. J."). Because the claim is barred by the liability waiver, the Court will grant defendant's motion for summary judgment.

### BACKGROUND

#### I.     Factual Background

On May 21, 2010, plaintiff participated in one of defendant CST's guided tours of Washington, D.C. ("the District"), in which visitors traverse the city while riding on Segway

vehicles. This action arises from a collision between plaintiff and another tour participant that left plaintiff with a fractured right arm.¹ The following facts are uncontested, except where noted.

Upon booking his Segway tour with defendant, plaintiff received an email that confirmed his reservation and payment, and that included the meeting point, directions, tips, and the cancellation policy for the tour. Confirmation Email [Dkt. # 49-16] at 2–4; 2d Am. Compl. ¶ 14. The email also advised plaintiff to arrive fifteen minutes early for the scheduled tour in order to "fill out necessary paperwork," and informed him that each member of his party "[would] be required to complete and sign a liability waiver form." Confirmation Email at 3. Plaintiff signed the liability waiver form on the day of his scheduled tour before the tour commenced. Release and Indemnification Agreement [Dkt. # 49-9] ("the Agreement"); Mero Dep. [Dkt. # 49-4] at 139:8–25, October 28, 2011.

Once the tour was underway, the guide directed the group to form an arrangement called "buddy buddy," in which two Segway riders pair up and ride parallel to one another. Mero Dep. at 159:9–15; Chamberlain Dep. [Dkt. # 49-6] at 17:8–13, November 30, 2011; D'Arcangelo Dep. [Dkt. # 49-7] at 20:9–14, October 21, 2011; 2d Am. Compl. ¶ 24; Pl.'s Mem. Supporting his Resp. in Opp. to Def.'s Mot. for Summ. J. [Dkt. # 50] ("Pl.'s Opp. to Summ. J.") at 4. Plaintiff claims that the arrangement had not been previously demonstrated to the group. 2d Am. Compl. ¶¶ 24–25. While riding in the buddy buddy arrangement, plaintiff's Segway collided into another Segway, and plaintiff fell to the ground. Chamberlain Dep. at 17:20–18:5; D'Arcangelo Dep. at 20:9–14. Based on those facts, plaintiff alleges that the tour company was negligent "in

---

1   The facts and the procedural history of this case are described in more detail in the Court's first and second Memorandum Opinions. Mem. Op. [Dkt. # 25] ("Mem. Op."); Mem. Op. [Dkt. # 35] ("2d Mem. Op.").

2

its failure to provide *properly trained tour guides* and *proper training to the Plaintiff*" and grossly negligent in "the *manner in which the tour was conducted*," specifically the "decision to travel in tandem; failure to provide proper training to the Plaintiff and failure to provide properly trained staff." 2d Am. Compl. ¶¶ 41–42 (emphasis in original).

Plaintiff has also blamed the collision on the vehicle itself; he claims that an "unexpected machine reaction," caused the Segway to stop abruptly and throw him to the ground. 2d Am. Compl. ¶ 29–30; Pl.'s Opp. to Summ. J. at 5. He further claims that had the "InfoKey" piece of the Segway been visible to him at the time of lateral impact, he would have been able to safely stop the machine before it abruptly discharged him. Pl.'s Opp. to Summ. J. at 10. Defendant rejects this hypothesis and maintains that the collision itself caused the fall and resulting injuries. Def.'s Mot. for Summ. J. at 29–30. Defendant has also proffered evidence from witnesses who testified that plaintiff was showing off and horsing around on his Segway, and that immediately prior to his accident he had been swerving in the direction of the Segway next to him. Faria Dep. [Dkt. # 49-8] at 19:8–20:24, October 21, 2011 (stating that plaintiff was acting "show-offy" and "cocky," that his antics on the Segway made her nervous, and that he was "swerving closer and closer to his significant other" when their Segways collided); D'Arcangelo Dep. at 18:15–20:14 (stating that plaintiff was "fooling around," "horsing around," that his behavior "seemed immature," and that he was swerving "closer and closer to [his partner's Segway] and eventually the wheels touched and that is when the accident occurred.")

## II. Procedural Background

Plaintiff filed his original complaint in this action against defendants City Segway Tours of Washington D.C., LLC, and City Segway Tours in the Superior Court for the District of Columbia on April 11, 2011, [Dkt. # 1-1], and defendants removed it to this Court on May 2,

3

2011, [Dkt. # 1]. Plaintiff later filed an amended complaint, which asserted claims of negligence, breach of contract, and misrepresentations. Verified Amended Complaint [Dkt. # 16] ("Am. Compl."). On November 28, 2011, the Court granted in part and denied in part a partial motion to dismiss or, in the alternative, for summary judgment, filed by defendants. Order [Dkt. # 24]. The Court dismissed plaintiff' breach of contract claim with prejudice. *Id.*

On December 23, 2011, plaintiff moved for leave to file a second amended complaint. Pl.'s Mot. for Leave to File 2d Am. Compl. [Dkt. # 26]. In its June 7, 2012 Memorandum Opinion, the Court denied plaintiff leave to add two additional defendants to the case and to assert proposed counts for breach of contract and products liability.[2] 2d Mem. Op. at 15. But the Court granted plaintiff leave to assert a claim for breach of warranty limited to the issue of whether defendant breached the warranty of merchantability, and to assert a count for misrepresentation with limitations that the Court had addressed in its first Memorandum Opinion. *Id.* at 10, 15.

Plaintiff filed his second amended complaint on June 21, 2012, asserting counts of negligence, breach of contract, misrepresentation, breach of warranty, and products liability. 2d Am. Compl. [Dkt. # 37]. Defendant answered the complaint, [Dkt. # 38], and on the same day, it filed a motion to strike immaterial allegations of the complaint and a partial motion to dismiss or, in the alternative, for summary judgment, as to Count III (misrepresentation) and Count IV (breach of warranty). [Dkt. # 39] ("Def.'s Mot. to Strike"). Plaintiff filed oppositions to the motion to dismiss, the motion to strike, and the motion for summary judgment. [Dkt. # 43–45]. After an August 30, 2012 motion hearing, the Court granted in part and denied in part the motion

---

2    The proposed second amended complaint attempted to reassert the breach of contract claim, Ex. 1 to Pl.'s Mot for Leave [Dkt. # 26-1] at 14–16, despite the Court's prior dismissal of the claim with prejudice. Mem. Op. at 13. Accordingly, the Court denied plaintiff leave to assert the claim in his second amended complaint. 2d Mem. Op. at 15.

4

to strike and denied the motion to dismiss. Minute Entry (Aug. 30, 2012). The Court also directed plaintiff to file a supplemental response to the motion for summary judgment by September 14, 2012. *Id.* Plaintiff filed his supplemental response on September 16, 2012, [Dkt. # 47], and defendant filed a supplemental reply on September 26, 2012. [Dkt. # 48].

On October 10, 2012, the Court granted defendant's partial motion for summary judgment on the Misrepresentation and Breach of Warranty Counts (Counts III and IV) in an oral ruling, Minute Entry (Oct. 10, 2012), because plaintiff had failed to come forward with any evidence to show that the absent "InfoKey" played any role in the collision. Defendant has now moved for summary judgment on the only remaining count, Count I, which alleges negligence. Def.'s Mot. for Summ. J. [Dkt. # 49].

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the

litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

I.  **The Agreement between plaintiff and defendant bars plaintiff's negligence claim as a matter of law**

"[A] release is a form of contract, and the rules of contract construction govern its interpretation. . . . Where the terms of the document leave no room for doubt, the effect of the release can be determined as a matter of law." *GLM P'ship v. Hartford Cas. Ins. Co.*, 753 A.2d 995, 998 (D.C. 2000) (internal quotation marks omitted) (holding that an insured's release of all negligence claims against the insurer barred the insured's negligence suit as a matter of law).[3]

A. **The Agreement is enforceable**

To be enforceable, a liability waiver "must be spelled out with such clarity that the intent to negate the usual consequences of tortious conduct is made plain." *Maiatico v. Hot Shoppes, Inc.*, 287 F.2d 349, 351 (D.C. Cir. 1961); *see also Moore v. Waller*, 930 A.2d 176, 181 (D.C. 2007) ("A fundamental requirement of any exculpatory provision is that it be clear and unambiguous."). While a valid waiver could bar a negligence claim, District of Columbia courts have adopted the position of the Restatement of Contracts that liability waivers "are not recognized to exempt a party from recklessly or intentionally caused harms." *Wright v. Sony*

---

3   The parties have agreed, and this Court believes it is appropriate, that District of Columbia law applies to this case. *See* 2d Am. Compl. ¶ 40; Def.'s Mot. for Summ. J. at 5; Mem. Op. at 5 n.1; *see also Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 59 (D.D.C. 2010).

*Pictures Entm't, Inc.*, 394 F. Supp. 2d 27, 33 (D.D.C. 2005) (applying District of Columbia law), citing Restatement (Second) of Contracts § 195(1) (1981); *see also Carleton v. Winter*, 901 A.2d 174, 181 (D.C. 2006) ("'Courts do not enforce agreements to exempt parties from tort liability if the liability results from that party's own gross negligence, recklessness, or intentional conduct.'"), quoting Corbin on Contracts § 85.15, 455 (2003). Thus, a court applying D.C. law will only enforce a liability waiver if it clearly and unambiguously expresses an intent to release the party from liability for tortious conduct, and to the extent the conduct is not grossly negligent, reckless, or intentional in nature. *See Wright*, 394 F. Supp. 2d at 32–33.

### 1. The language of the Agreement was clear and unambiguous

The one-page liability waiver that plaintiff signed on May 21, 2010 – the day of his Segway tour – is entitled "Release and Indemnification Agreement," and it states:

> . . . ***I do hereby waive, release, acquit, and forever discharge*** the CST Indemnitees from any and all losses, claims, suits, causes of actions, etc. for property damages, personal injuries, or death I may suffer or sustain while riding or operating the Segway, whether arising from my own acts, actions, activities and/or omissions or those of others, except only those arising solely from the gross negligence of the CST Indemnitees.
>
> ***My agreement to indemnify and my release of the CST Indemnitees as stated herein shall encompass all losses, claims, suits, causes of actions, etc., excepting only those with respect to which it is determined that the grossly negligent act(s) of any of the CST Indemnitees was the sole proximate cause thereof, and, except as so limited, includes circumstances and events with respect to which it is alleged or determined that the negligent acts or omissions of any of the CST Indemnitees may have been jointly and concurrently, with myself or others, the proximate cause of the losses, claims, suits, actions, etc. I understand and acknowledge that this indemnification and release will apply even in circumstances where a CST Indemnitee may be indemnified against or released and absolved from the consequences of their own negligence.***[4]

---

[4] On June 28, 2009, plaintiff and his two sons took a Segway tour of Chicago with City Segway Tours of Chicago, LLC. Mero Dep. at 68:5–15. Prior to the tour, plaintiff signed a similar Release and Indemnification Agreement three times, once on his own behalf and twice on behalf of his minor sons. *Id.* at 69:10–18, 93:4–95:7. Thus, upon executing the form for his May 21, 2010 tour, he had signed a Release and Indemnification Agreement a total of four times.

The Agreement at 1 (emphasis in original). The "CST Indemnitees" are defined as "CST and its members, officers, agents, employees, guides, contractors, and other representatives." *Id.*

In *Moore v. Waller*, the District of Columbia Court of Appeals upheld the enforceability of a liability waiver that the plaintiff had signed as part of a membership agreement with a fitness center, and found that it barred the plaintiff's recovery for injuries he had sustained when a kickboxing instructor struck a punching bag that was braced against the plaintiff's body. 930 A.2d at 177. The release stated that the plaintiff "'fully and forever releases and discharges the [defendant] . . . from any and all claims, damages, demands, rights of action, or causes of action . . . including those which *ar[o]se out of the negligence of the [defendant]*." *Id.* at 178 (emphasis added).

In determining that the waiver was sufficiently clear and ambiguous, the court emphasized a number of factors. Specifically, the court relied on the prominence of the title "WAIVER AND LIABILITY," spelled out in capital letters; the fact that the plaintiff had signed his initials next to the written statement "[t]he member, by initialing below, acknowledges that he/she has carefully read this waiver and release and fully understands that it is a waiver and release of liability . . ."; and the conspicuousness of the waiver language as a release of liability. *See id.* at 181. In addition, the court found that the injuries that the plaintiff had allegedly suffered were "reasonably within the contemplation of the parties." *Id.* Given these factors, the court found that the language expressly releasing the defendant from negligence claims clearly and unambiguously evinced the intent of the parties to release the defendant from the type of tortious conduct at issue in the case. *Id.*

As in *Moore*, the Agreement in this case clearly and unambiguously releases CST from liability for the type of negligence alleged. The Agreement is a concise one-page document with

the title, "Release and Indemnification Agreement," conspicuously appearing at the top of the page in capital letters and bold typeface. In addition, the language that releases CST from liability appears in bold typeface and italics. Plaintiff accepted the terms of the Agreement by signing his name at the bottom of the page.

Furthermore, the injuries that plaintiff has allegedly suffered were "reasonably within the contemplation of the parties" at the time the Agreement was made. *See Moore*, 930 A.2d at 181. In fact, they were expressly contemplated in the Agreement itself. The Agreement states that "riding a Segway will . . . expose [the rider] to various hazards and risks, including . . . risk of collision with pedestrians, vehicles, [and] other riders . . . which present . . . the risk that [the rider] could fall . . . suffer contusions, lacerations, sprains, [and] factures." The Agreement at 1. That is exactly what plaintiff alleges to have occurred – he collided with another Segway rider, fell off his Segway, and suffered injuries including fractures.[5] 2d Am. Compl. ¶¶ 29, 33.

As in *Moore*, plaintiff specifically agreed to release defendant from causes of action arising from its negligence. The Agreement at 1. The agreement expressly waives CST's liability for "all losses, claims, suits, causes of actions, etc. for property damages, personal

---

5  Plaintiff asserts that "non-intuitive risks" – namely defendant's failure to warn him of the Segway's "safety shutdown process" and "to provide the promised adequate training on the utility of the info key" – were the cause of his injuries. Pl.'s Opp. to Summ. J. at 5, 10–11, 18. He argues that failure to disclose these "non-intuitive risks" renders the Agreement unenforceable. *See id.* at 17–18. The problem with this argument is twofold. First, the Court already granted summary judgment on plaintiff's misrepresentation and breach of warranty claims precisely because plaintiff had not shown that the "non-intuitive risk" posed by the missing InfoKey was the cause of his fall and resulting injuries. *See* Young Dep. [Dkt. # 49-5] 102:1–4, 102:25–103:2 (plaintiff's own expert stating that "even with the infokey present it's still possible that the accident could have occurred exactly as it was," and "I don't believe it had anything to do with the cause [of the fall]"). Second, since plaintiff's own expert conceded that plaintiff would not have fallen had his Segway not collided with another, Young Dep. at 84:23–85:7, and since the injuries were caused by the fall, the Court finds that the risk of incurring exactly the type of injury that plaintiff incurred was "reasonably within the contemplation of the parties," and was indeed expressly disclosed in the Agreement.

injuries or death I may suffer or sustain while riding or operating the Segway, whether arising from my own acts, actions, activities and/or omissions or those of others, except only those arising solely from the gross negligence of the CST Indemnities." *Id*. This language is clear enough to encompass the remaining allegations in the complaint.

Indeed, courts applying District of Columbia law have upheld liability waivers that were less specific than the Agreement before the Court, including those with terms that did not expressly foreclose causes of actions arising from negligence. *See Wright*, 394 F. Supp. 2d at 30, 34 (applying District of Columbia law) (finding that a waiver wherein plaintiff agreed not to bring a legal action "'on any legal theory'" was sufficient to bar a claim for negligence); *Potomac Plaza Terraces, Inc. v. QSC Prods., Inc.*, 868 F. Supp. 346, 354–55 (D.D.C. 1994) ("although defendant's liability disclaimer does not specifically refer to negligence claims . . . [its] language is sufficiently broad and sweeping to encompass losses by negligence"); *Moses-Ecco Co. v. Roscoe-Ajax Corp.*, 320 F.2d 685, 687–88 (D.C. Cir. 1963) (holding that broad language to indemnify against "any loss . . . arising or resulting from the performance of this contract" was sufficiently clear in its intent to bar claims arising from defendant's negligence).

The Appellate Court of Illinois recently examined whether the exact liability waiver at issue in the instant case foreclosed a plaintiff from bringing a negligence action against City Segway Tours of Chicago to recover for injuries suffered on a Segway tour there. *Hamer v. City Segway Tours of Chicago, LLC*, 930 N.E.2d 578, 580 (Ill. App. Ct. 2010). Illinois law, which instructs courts to "construe the [liability waivers] strictly against the parties they benefit," requires that "[the waivers] . . . spell out the intention of the parties with great particularity and will not be construed to defeat a claim which is not explicitly covered by their terms." *Id.* at 581

(internal quotation marks omitted). Thus, to enforce a waiver of liability, Illinois law requires considerably more clarity than District of Columbia law with respect to "the type of activity, circumstance, or situation that [the waiver] encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care." *Hamer*, 930 N.E.2d at 581, quoting *Evans v. Lima Lima Flight Team Inc.*, 869 N.E.2d 195, 203 (Ill. App. Ct. 2007) (internal quotation marks omitted). Despite the high bar for enforcement in Illinois, the *Hamer* court upheld the liability waiver as sufficiently clear and unambiguous to foreclose plaintiff's negligence claim as a matter of law. *See Hamer*, 930 N.E.2d at 581. Although Illinois law is not binding on this Court, it finds the *Hamer* holding instructive in that a court employing a more exacting standard than this Court is required to apply upheld the exact liability waiver at issue here to foreclose the same type of negligence action presented here. Accordingly, and for all of the reasons stated above, the Court finds that the liability waiver that plaintiff signed was sufficiently clear and unambiguous in expressing the parties' mutual intent to relieve defendant of liability for the negligence that plaintiff has alleged in his second amended complaint.

## II. Plaintiff's gross negligence and recklessness claims fail[6]

Because District of Columbia law prohibits release from liability for grossly negligent, reckless, or intentional acts, the Agreement will not be held to indemnify defendant with respect to such conduct. However, since plaintiff does not assert in his complaints that defendant intentionally caused his injuries, nor does he bring any claims against defendant for intentional

---

6  Although plaintiff does not set forth separate counts for gross negligence or recklessness in his second amended complaint, the Court will consider both claims because the Count in the second amended complaint that is labeled "Negligence" also addresses gross negligence and recklessness. *See* 2d Am. Compl. ¶¶ 42–44.

torts, the Court will consider only whether he has shown that defendant acted recklessly or with gross negligence.  *See* 2d Am. Compl. ¶ 42.

District of Columbia law defines gross negligence as "such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others." *District of Columbia v. Walker*, 689 A.2d 40, 44–45 (D.C. 1997).[7]  This standard implies "that the actor has engaged in conduct so extreme as to imply some sort of bad faith." *Id.*  A court will find gross negligence when "the actor acted in such disregard of a risk so obvious that the actor must be taken to be aware of it and so great as to make it highly probable that harm would follow." *Id.* (internal quotation marks omitted).  Similarly, recklessness is misconduct requiring "'a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts that would disclose this danger to any reasonable person.'" *In re Romansky*, 825 A.2d 311, 316 (D.C. 2003), quoting 57 Am. Jur. 2d Negligence § 302 (1989).

Plaintiff sprinkles the terms "gross negligence" and "recklessness" throughout his pleadings, *see, e.g.*, 2d Am. Compl. ¶¶ 42–46, but in his opposition to defendant's motion for summary judgment, he repeatedly asserts that he has pled sufficient facts to establish a genuine issue of material fact with respect to *ordinary negligence*, not gross negligence.  Pl.'s Opp. to Summ. J. at 8, 11–12.  Even assuming that plaintiff intended to maintain his assertions of gross negligence and/or recklessness, his mere recitations of the terms "gross negligence" and

---

7   District of Columbia law does not generally recognize varying degrees of negligence. *Hernandez v. District of Columbia*, 845 F. Supp. 2d 112, 116 (D.D.C. 2012).  However, courts applying District of Columbia law have, for equitable reasons, recognized whether a defendant acted with gross negligence; such is the case with liability waivers.  *Id.*, citing *Carleton v. Winter*, 901 A.2d 174, 181–82 (D.C. 2006) (holding that where a liability waiver limited a party's liability for negligence, plaintiff could nevertheless proceed on a theory of gross negligence as a matter of "public policy to discourage aggravated wrongs").

"recklessness" are conclusory, and thus fall far short of meeting the summary judgment standard. "[A]s the nonmoving party, the plaintiff may not rely solely on allegations or conclusory statements. Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor." *Akers v. Beal Bank*, 845 F. Supp. 2d 238, 243–44 (D.D.C. 2012) (internal citation omitted).

Plaintiff has not presented any evidence showing that CST acted with disregard to any risk, much less that it acted in disregard to an obvious and great risk or with knowledge of such a risk. In fact, plaintiff's opposition to defendant's motion for summary judgment is almost completely devoid of references to the factual record. In assessing whether factual disputes exist at the motion for summary judgment stage, the Court is not required to wade through the factual record itself. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").[8] And it declines to do so here. *See Akers*, 845 F. Supp. 2d at 243 ("[T]he district court is not obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determination of what may, or may not be a genuine issue of material disputed fact.") (internal quotation marks omitted).

The few citations to the factual record that plaintiff does provide are insufficient to create a genuine issue of material fact on this issue. Plaintiff cites his expert's deposition, stating that riding in the "buddy buddy" formation is not an appropriate formation for novice Segway users because the Segway might have an unusual reaction to lateral impact. Pl.'s Opp. to Summ. J. at

---

8  On August 30, 2012, the Court specifically reminded plaintiff's counsel of his obligation under Rule 56 to support claims with citations to the factual record. At that point, defendant's earlier motion for partial summary judgment was before the Court, and the Court extended plaintiff the opportunity to file a supplemental response to the motion that actually contained citations to evidence that would support his assertions. *See* Minute Entry (Aug. 30, 2012).

4–5; Young Dep. at 67:5–:15. Plaintiff does not explain how this statement demonstrates that CST engaged in such an extreme deviation from the standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others – the standard for gross negligence – or that it had any knowledge of serious danger or of facts that would disclose serious danger to any reasonable person – the standard for recklessness. *See Romansky*, 825 A.2d at 316 (defining recklessness), *Walker*, 689 A.2d at 44–45 (defining gross negligence); *see also Akers*, 845 F. Supp. 2d at 244 (stating that failure to explain the significance of evidence presented to the court, particularly when its relevance is not evident, contributes to plaintiff's inability to show a genuine issue of material fact).

In fact, in opining on the potential hazards of a "buddy buddy" formation, plaintiff's own expert stated that he believed "it's clear" that defendant did not know about the consequences of the lateral impact hazard, that it is "essentially a concealed hazard that people are not going to be aware of," and that he "believe[s defendant] did train [its] riders about everything that they were aware of with the product." Young Dep. 103:14–:21, 104:23–:25, 105:15–:17. The expert did testify that in his view, defendant had an obligation to read certain manufacturer materials that would have disclosed the lateral impact hazard, and then to warn participants in the tour about the hazard. *Id.* at 103:23–:25, 104:20–106:13. But this testimony is not sufficient to support a

claim for gross negligence.⁹ Plaintiff presented no evidence that defendant knew about the risk of injury or that the risk was so obvious that CST must be deemed to have known about it. Accordingly, plaintiff fails to point to any evidence that establishes a genuine issue of material fact as to defendant's alleged gross negligence or recklessness, and the Court finds that plaintiff cannot succeed on these claims as a matter of law. Thus, there are no claims that are not covered by the waiver.

## II. The liability waiver did not lack consideration

Plaintiff next argues that the liability waiver is unenforceable because it lacks consideration. Pl.'s Opp. to Summ. J. at 16–17. This argument must fail. "[A]ny performance which is bargained for is consideration . . . This . . . states the general rule that exchange of performance for promise is an enforceable bargain . . . ." Restatement (Second) of Contracts § 72 cmt. a (1981); *see also Rinck v. Ass'n of Reserve City Bankers*, 676 A.2d 12, 16 (D.C. 1996). Defendant's performance in this case was its provision of a Segway to plaintiff and a guided tour of the District. In return, plaintiff promised he would not sue defendant for negligence if he were injured on the tour. The Agreement at 1 ("For good and valuable consideration, including the opportunity extended to me by [CST] . . . to ride a Segway . . . I do

---

9  Plaintiff's other citations in support of his negligence and gross negligence claims are likewise insufficient to establish a genuine issue of material fact with respect to gross negligence or recklessness:
- Citations to the Segway Reference Manual, [Dkt. # 50-2], merely highlight features of the machine, the InfoKey, and the standby mode. *See* Pl.'s Opp. to Summ. J. at 5, 9–10. Plaintiff makes no attempt to explain why these citations demonstrate gross negligence or recklessness. *See Akers*, 845 F. Supp. 2d at 244.
- As the Court points out, the citations to plaintiff's expert's deposition, *see* Pl.'s Opp. to Summ. J. at 6; Young Dep. 103:4–106:18, demonstrate that defendant was unaware of the alleged risks associated with lateral impact on the Segway, and thereby fail to show recklessness or gross negligence.
- Plaintiff's citation to "Depo of tour guide Krebs," Pl.'s Opp. to Summ. J. at 16, is not useful because plaintiff fails to include the transcript of the relevant portion of the deposition as an exhibit to his opposition, so the Court cannot refer to it.

hereby unconditionally assume the entire responsibility and liability for . . . personal injuries."). In short, defendant did provide consideration for plaintiff's promise.

Plaintiff asserts that defendant sent a confirmation email to him, and that the Segway and guided tour were provided to him by defendant as consideration for the email agreement, not for the waiver of liability Agreement.[10] Pl.'s Opp. to Summ. J. at 17. According to plaintiff, since these services were already provided as consideration for the email agreement, defendant was required to have offered new consideration for the Release and Indemnification Agreement. *Id.* However, the Court has already rejected plaintiff's characterization of the confirmation email as a contract between the parties. Mem. Op. [Dkt. # 25] at 5–7. As discussed in the Court's previous Memorandum Opinion, plaintiff's argument overlooks the clear language in the confirmation email indicating that the email was not considered to be a contract.

Plaintiff's argument also overlooks the provision in the confirmation email which states that tour participants "will be required to complete and sign a liability waiver form" before they may participate in the tour. 2d Am. Compl. ¶ 14. In other words, defendant's offer of services did not extend to anyone who did not sign the Agreement. Indeed, plaintiff conceded that he understood that he would be unable to participate in the tour if he did not sign the agreement. Mero Dep. 140:12–:13. Thus, defendant's provision of the Segway and guided tour constitutes consideration for plaintiff's waiver of defendant's liability for any claims of negligence, and that consideration was sufficient to establish an enforceable contract.

What's more, more than one promise can be supported by a single consideration: "There is consideration for a set of promises if what is bargained for and given in exchange would have

---

10  Although plaintiff has not expressly stated what he considers to be his consideration for the alleged email contract, the Court assumes that plaintiff considers his payment to CST to constitute his consideration.

been consideration for each promise in the set if exchanged for that promise alone." Restatement (Second) of Contracts § 80(1) (1981); *see also Rinck*, 676 A.2d at 16 (providing the example that if an employer promises an employee job security when the parties enter the employment agreement, the employee's service, although a single consideration, is sufficient to support the employer's various obligations, including the job security provision). Thus, even if the provision of the Segway and the guided tour constituted consideration for plaintiff's payment, that consideration could also support plaintiff's agreement to forgo his right to sue defendant for negligence. Accordingly, defendant did provide adequate consideration for plaintiff's waiver of its liability.[11]

### III. The liability waiver is not unenforceable as against public policy

Plaintiff next asserts that the liability waiver is unenforceable as against public policy due to the unequal bargaining power between the parties. Pl.'s Opp. to Summ. J. at 20. However, a showing of unequal bargaining power does not by itself render a liability waiver unenforceable on public policy grounds.[12] *Moore*, 930 A.2d at 182 ("We do not suppose that the parties in fact had equal power, but Moore does not meet the criteria for invalidating a contract on [public policy grounds]."). Rather, the plaintiff must show a lack of opportunity for negotiation, that the service he received was a necessary service, and that there was a great disparity in bargaining

---

[11] Furthermore, even if there were no consideration, the Agreement would still be valid. "[W]hen a contract is fully executed it is valid even if it lacked consideration." *Clark v. Clark*, 535 A.2d 872, 877 (D.C. 1987). Defendant executed its part of the bargain and allowed plaintiff to take the Segway tour. Accordingly, the Court will not permit plaintiff to receive the benefit of the bargain without upholding his agreement to waive defendant's liability for any negligence.

[12] Liability waivers can also be unenforceable as against public policy if they attempt to limit a party's liability for gross negligence, recklessness, or intentional misconduct. *See Godette v. Estate of Cox*, 592 A.2d 1028, 1034 (D.C. 1991). Since the Court already found that the Agreement did not attempt to relieve defendant of liability for such behavior, it declines to address the issue again here. Accordingly, the agreement is not unenforceable as against public policy on those grounds.

17

power. *Id.* In *Moore*, the court found that the plaintiff had not shown a lack of opportunity for negotiation because he presented no evidence that he had objected to the waiver provision or attempted to bargain for different terms. *Id.* Neither had he shown that the contract involved a necessary service. *Id.* Due to these deficiencies, the court found that there was not a great enough disparity in bargaining power to render the agreement unenforceable on public policy grounds. *Id.*

Plaintiff similarly presents no evidence that he objected to the Agreement or attempted to bargain for different terms; he therefore fails to show a lack of opportunity for negotiation. In fact, in his deposition, he conceded that he did not attempt to bargain for different terms. Mero Dep. 142:1–:14. And surely a voluntary Segway tour throughout the city cannot be considered to be a necessary service; plaintiff could have skipped the trip to D.C. or signed up for a different manner of viewing the nation's capital if he did not want to sign the waiver he was previously warned about.[13] Thus, plaintiff has not shown that the Agreement violates public policy. Because the Court finds that plaintiff's claim is barred by plaintiff's agreement to waive

---

13     The Court notes that plaintiff had taken a Segway tour less than a year earlier than the tour at issue, and had signed three liability waivers at that time, on behalf of himself and his two minor sons. *See supra* note 4. Thus, plaintiff was surely well aware that in order to participate in the tour, he would be required to sign the waiver.

defendant's liability, the Court need not reach defendant's other arguments for summary judgment.[14]

---

[14] The Court notes, however, that it finds defendant's argument that plaintiff has not proffered sufficient evidence to show that defendant breached a duty of care owed to plaintiff to be persuasive for the following reasons:

"[A] claim alleging the tort of negligence must show . . . that the defendant owed a duty to the plaintiff, [and that defendant] breach[ed] that duty. . . ." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011). Thus, if plaintiff cannot show a breach of the duty of care, he cannot prevail on his negligence claim. To establish the applicable standard of care, expert testimony is required unless "'the subject matter is within the realm of common knowledge and everyday experience.'" *Briggs v. WMATA*, 481 F.3d 839, 845 (D.C. 2007), quoting *Hill v. Metro. African Methodist Episcopal Church*, 779 A.2d 906, 908 (D.C. 2001). There is no evidence that the average layman has ever ridden a Segway, much less would be familiar with the standard of care required in training novice riders to use the device. Additionally, the data regarding the machine's safety shutdown system and InfoKey is technical in nature and would not fall within the realm of common knowledge and everyday experience. Accordingly, plaintiff is required to proffer expert testimony.

Although plaintiff has retained an expert witness, the witness is not qualified to testify on the applicable standard of care for training tour participants on use of the Segway. To be qualified, an expert witness must have "sufficient skill, knowledge, or experience in [the relevant] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for the truth." *Dyas v. United States*, 376 A.2d 827, 832 (D.C. 1977), quoting McCormick on Evidence § 13 at 29–31 (E. Cleary, 2d ed. 1972). Plaintiff's expert has ridden a Segway only once and has observed someone else providing training on Segway operation only once. Young Dep. 15:13–:15, 16:7–:11. He has never trained someone to use a Segway, nor has he ever worked for or operated a Segway tour company or conducted a Segway tour. *Id.* at 15:16–16:2. Simply stated, he does not have sufficient skill, knowledge, or experience to aid a trier of fact in its search for the truth.

Moreover, plaintiff's opposition to summary judgment does not dispute that his expert is not qualified to testify on the standard of care for Segway training. "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003). Thus, the Court will treat this argument as conceded, but it notes that even if the argument were not conceded, the Court would agree with defendant that plaintiff cannot show a breach of duty of care because he lacks a qualified expert to testify on the matter.

Resolution of the final issues – contributory negligence and assumption of risk – depends upon contested facts, although the Court notes that plaintiff's opposition to defendant's motion is very short on references to the factual record.

## CONCLUSION

For the reasons stated above, the Court will grant defendant's motion for summary judgment. A separate order will issue.

*[signed] Amy B. Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE: August 23, 2013